HOWARD S. IVES, HIGHWAY COMMISSIONER *v.* WILLA ADDISON ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 3—decided July 13, 1967

*William R. Curtis,* for the appellant (named defendant).

*Clement J. Kichuk,* assistant attorney general, with whom, on the brief, were *Harold M. Mulvey,* attorney general, and *Jack Rubin,* assistant attorney general, for the appellee (plaintiff).

RYAN, J. On October 7, 1965, the plaintiff took by eminent domain, under the provisions of General Statutes (Rev. to 1966) § 13a-73 (b), the real estate of the defendant Willa Addison, hereinafter called the defendant, located in the city of Norwalk and filed his assessment of damages with the clerk of the Superior Court for Fairfield County. Damages were assessed at $25,000. Thereafter, the defendant appealed from this assessment to the Superior Court. In accordance with § 48-11 of the General Statutes, the plaintiff deposited the sum of $25,000 with the clerk of the Superior Court. Of the sum originally on deposit, there remained in the hands of the clerk the sum of $500 subject to a claim by the plaintiff for the adjustment of real property taxes on the real estate. The defendant made application for payment from the balance on hand, claiming that the sum of $458.67 should be paid to her and the balance of $41.33, to the plaintiff.

Real property taxes in the city of Norwalk laid on the assessment list of October 1, 1964, were due on October 1, 1965. They could be paid in two equal instalments, one during the month of October, 1965, and the other during the month of April, 1966. The

revenue raised by these taxes was to be expended for the operation of the city of Norwalk for the fiscal year September 1, 1965, through August 31, 1966. Real property taxes in the city of Norwalk to be laid on the assessment list of October 1, 1965, did not become due until October 1, 1966. They could be paid in two equal instalments, one during the month of October, 1966, and the other during the month of April, 1967. The revenue raised by the taxes laid on the assessment list of October 1, 1965, would be expended for the operation of the city of Norwalk for the fiscal year September 1, 1966, to August 31, 1967. The assessment list of October 1, 1965, was not complete at the time of the taking and would not be complete until some time after the meetings of the board of tax review in June, 1966. The taxes to be laid on the assessment list of October 1, 1965, could not be ascertained until after the meeting of the board of estimate and taxation in July, 1966, for the purpose of establishing the tax rates. On the lists of October 1, 1964, and October 1, 1965, the real property taxes on the property in question were assessed against the defendant. The matter was heard by the court, and the defendant's application was denied. From this decision the defendant has appealed to this court.

The defendant does not assign error in the finding of subordinate facts but attacks the conclusions of the court in denying her application. She claims that, in the apportionment of taxes assessed against real estate in the city of Norwalk, the plaintiff, as condemnor, is bound by a long-established practice, adopted by members of the Norwalk bar in the case of a sale of real estate, of apportioning and adjusting taxes on the basis of the fiscal year within which the sale occurs. The plaintiff condemnor claims

that taxes must be adjusted and apportioned, not on the basis of any local custom, but as determined by the assessment date established by statute.

The defendant, in her brief, presents the respective claims of the parties as follows: "If the Addison property had been sold, rather than condemned, on October 7, 1965, the buyer and seller, in accordance with prevailing practice in the City of Norwalk, would adjust and apportion current taxes (meaning those taxes laid on the grand list of October 1, 1964, due October 1, 1965) as follows:

"Total tax $413.26, or $1.13+ per day
[the defendant] Willa Addison's share:
    September 1, 1965, to October 7, 1965,—37 days,
                              $ 41.90
Purchaser's share:
    October 8, 1965, to August 31, 1966—328 days,
                              371.36

"In his condemnation proceedings, however, the Highway Commissioner requires that the condemnee assume the entire tax on the grand list of October, 1964, and also a portion of the tax, not yet determined or levied, on the grand list of October, 1965. By this method, the Commissioner charges Willa Addison as follows:

"Current taxes (grand list of October 1,
    1964) to be paid in full by condemnee    $413.26
Plus a portion of tax to be laid on grand
    list of October 1, 1965, computed from
    October 1 to October 7 — 7 days        7.93

For a total charge against the condemnee
    of                              $421.19"

The defendant claims that, in consequence of the adoption of the plaintiff's method of adjusting

taxes, she has not received $25,000 (the amount of damages assessed by the plaintiff as the value of the property in the condemnation) but $25,000 less the amount of the tax adjustment. She urges that she has suffered a loss substantially greater than she would have suffered, had there been a sale and that this is not fair and just compensation in accordance with law.

In the city of Norwalk, there was an accepted practice among members of the Norwalk bar, in the case of a sale of real estate, of apportioning and adjusting taxes on the basis of the fiscal year within which the sale occurred. The first question for this court to determine is whether the plaintiff, as condemnor, is bound by this practice. When a sale takes place, the parties are at liberty to adopt whatever method of apportionment or adjustment of taxes they may choose. Since it is a matter of contract, they may accept the practice of the Norwalk bar or they may reject it. The mere fact that it is customarily done in that manner has no compelling force in a sale of real estate unless the parties agree to it. It is difficult to understand how the plaintiff can be obliged to accept this practice.

"When any person, at the time he acquires equity in real estate, expressly assumes the payment of taxes which are to become payable thereafter, he shall become liable for the payment thereof to the same extent and in the same manner as though such real estate were assessed in his name." General Statutes (Rev. to 1964) § 12-70. Under the terms of this statute a purchaser of real estate may, by agreement, assume the payment of taxes payable at a later date, and, if he does, he shall be liable for their payment as though he were the record owner of the property at the time of the assessment. "All

taxes properly assessed shall become a debt due from the person, persons or corporation against whom they are respectively assessed to the town, city, district or community in whose favor they are assessed, and may be, in addition to the other remedies provided by law, recovered by any proper action in the name of the community in whose favor they are assessed." General Statutes (Rev. to 1964) § 12-161. The record owner of the real estate as of the date of the assessments of October 1, 1964, and October 1, 1965, was the defendant. "The party against whom a tax is assessed is directly liable for the tax and his duty [to pay it] is clear." *Middletown Savings Bank* v. *Bacharach,* 46 Conn. 513, 524; *Ashley Realty Co.* v. *Metropolitan District,* 132 Conn. 551, 556, 46 A.2d 13; see *Worobey* v. *Sibieth,* 136 Conn. 352, 360, 71 A.2d 80; *Cromwell* v. *Savage,* 85 Conn. 376, 377, 82 A. 972. The person liable for the payment of the taxes was, therefore, the defendant, and this is true even though payment was not due in the case of taxes on the list of October 1, 1964, until October 1, 1965, and in the case of taxes on the list of October 1, 1965, until October 1, 1966. Our statute concerning municipal tax liens provides as follows: "Such lien, unless otherwise specially provided by law, shall exist from the first day of October or other assessment date of the municipality in the year previous to that in which such tax, or the first instalment thereof, became due until one year after such tax or first instalment thereof became due and, during its existence, shall take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it." General Statutes (Rev. to 1964) § 12-172.

On October 7, 1965, at the time of the taking, the

city of Norwalk had a lien on the real estate which attached as of October 1, 1964, and a lien which attached as of October 1, 1965. As of that time, whether the property was sold or taken by eminent domain, the defendant was personally liable for the taxes assessed, and the property was encumbered by the liens of the municipality. Nevertheless, the defendant urges that, since the local method of adjustment of taxes was not used, she has not received fair and just compensation for her property. "Notice shall be given to all persons appearing of record as holders of any . . . lien or other encumbrance on any real estate . . . [which is condemned]; and the amount due any such . . . lienor or other encumbrancer . . . shall be paid to him . . . before any sum is paid to any owner of such property." General Statutes § 48-21; see *Palo* v. *Rogers,* 116 Conn. 601, 604, 165 A. 803. "Under article first, § 11, of the Connecticut constitution, no property shall be taken for a public use without just compensation. This means a fair equivalent in money for the property taken from the condemnee as nearly as its nature will permit. Ordinarily, although not necessarily, this is the market value of the property taken. But the question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken. *Winchester* v. *Cox,* 129 Conn. 106, 114, 26 A.2d 592; *Nicholson* v. *Weaver,* 194 F.2d 804, 807 (9th Cir.)." *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340.

It is the value of the land at the time of the taking which constitutes the basis of just compensation. *Clark* v. *Cox,* 134 Conn. 226, 229, 56 A.2d 512. The

defendant's personal obligation to pay the taxes in question was established, and the property was encumbered by the liens of the city on October 7, 1965. General Statutes (Rev. to 1964) § 12-172. Under § 48-21 of the General Statutes, it was necessary that notice be given to the city of Norwalk, and the plaintiff was required to pay to the city the amount due it for taxes before any sum could be paid to the owner of the property. The adjustment of taxes, claimed by the plaintiff and approved by the trial court, was made in direct proportion to the period of ownership of the property by the defendant. The record does not disclose that the city of Norwalk has sought the payment of any additional sum for taxes.[1] The claim of the defendant that she has received less than the fair market value of her property cannot be sustained. The judgment of the court is legally correct, fair and equitable to the defendant.

There is no error.

In this opinion the other judges concurred.

---

[1] Section 8-129a of the General Statutes (Rev. to 1966) permits a redevelopment agency upon acquiring property to apportion municipal taxes in accordance with prevailing local practice. The legislature has not seen fit to adopt a similar statute for state highway condemnations under § 13a-73 (b).